SEMPRE, J.,
and R. E. PARKER, J., dissented from a great part of the foregoing *234 opinion, and SAMPLE delivered the following' opinion:
Upon the case, as stated in the Court’s opinion, three questions arose, and were argued with great ability by the Counsel for the prisoners, and for the captain or master.
1. Had the Superior Court of Haw for the county of Henrico jurisdiction to award a Writ of Habeas Corpus, and to discharge the prisoners when confined under colour of the authority of the United States ?
2. Is the 7th section of the Act of Congress, passed on the 20th June, 1790, entitled, “An Act for the government and regulation of Seamen in the Merchant service,” so far as it authorises any Justice of the Peace within the United States, to issue his warrant to apprehend a deserter and commit him until the ship or vessel shall be ready to proceed on her voyage, or the master shall require his discharge, and then to be delivered to the master, made in pursuance of the Constitution of the United States ?
3. What is the legal effect of the contract made by the petitioners with the master, mentioned in the “returns,” and how is the same affected by the commitment set forth in this case ?
Upon the first point, I am of opinion, that a Judge of the General Court, a Judge of either of the Superior Courts of Chancery, a Superior Court of Haw, or of Chancery, or the General Court, may award a Writ of Habeas Corpus, and discharge a prisoner confined under colour of the authority of the United States ; but, if the confinement be the consequence of a suit or. prosecution pending in the Courts of the United States, or a State Court, a Judge ought not to interfere, unless ,the authority under which the United States’ Court is proceeding, be clearly without foundation, or the confinement can result in nothing but the oppression of the prisoner. In this case, I am of opinion, that the Superior Court of Henrico had jurisdiction.
*In considering the second question, the power of Congress to authorise the arrest and commitment of offenders against the Haws of the United States, by persons designated as Judicial officers of the States, (Justices of the Peace,) has been brought into view, argued at great length at the Bar, and maturely considered by the Court. Having the misfortune to differ from the Court on this subject, I must state at large the grounds of my opinion. The 33d section of the Judicial Act of the United States, is in these words :
“And be it further enacted, That for any crime or offence against the United States, the offender may by any Justice or Judge of the United States, or by any Justice of the Peace, or other Magistrate, of any of the United States, where he may be found, agreeably to the usual mode of process against offenders in such State, and at the expense of the United States, be arrested and imprisoned, or bailed, as the case may be, for trial before such Court of the United States as by this Act has cognizance of the offence : and copies of the process shall be returned as speedily as may be into the Clerk’s office of such Court, together with the recognizances of the witnesses for their appearance to testify in the case; which recognizances the Magistrate before whom the examination shall be, may require on pain of imprisonment. And upon all arrests in Criminal cases, bail shall be admitted, except where the punishment may be death ; in which cases, it shall not be admitted but by the Supreme, or a Circuit Court, or by a Justice of the Supreme Court, or a Judge of a District Court, who shall exercise their discretion therein, regarding the nature and circumstances of the offence, and of the evidence and the usages of Daw.” Laws U. States, vol. 1, p. 72.
By this section, I contend, that Congress have by Law appointed all the Justices of the Peace, in the United States, officers, and bestowed upon them Judicial authority. By the Constitution, the nomination and appointment of all officers of the United States, is to be made by the President with the advice of the Senate, (whose appointments are not otherwise provided for, and which shall be established by Law,) with the exception of such as Congress may by Haw authorise the President alone, the Courts of Law, or the Heads of Departments, to make. Congress can create, but cannot fill an office. The Constitution not only vests the appointment elsewhere, but by giving to Congress Legislative powers only, the power of making appointments *is excluded. Constitution of United States, art. 1, sec. 1; art. 2, sec. 1, 2. It has been contended by an enlightened Judge, that because the President and Senate have given their assent to the Daw; and therefore, to the appointment of the officers designated, (even if they be considered in that light,) the joining the vote of the House of Representatives will not render the appointment unconstitutional. This argument seems to rest on the assumption, that the mode of appointing an officer under the Constitution, is matter of mere form, and not of substance. But the Government of the United States, is in the strictest sense, a limited Government. It is not only limited, because, 1. It possesses only the powers granted. 2. That rights are reserved, which are not to disparage others not reserved. 3. The exercise of some powers is expressly forbidden. 4. All powers not granted, are reserved to the States, or to the people ; but because the several departments are limited by the particular distribution of powers among them, Constitution U. States, art. 1, sec. 1; art. 2, sec. 1, 2; art. 3, sec. 1, 2, &c. Amend. Const. U. S. art. 9, 10, &c. the mode or manner, then, in which a power is exercised, and by which of the departments, is matter of substance and vital importance. The several departments cannot, by their consent, be blended. Otherwise, by the consent of the several departments, the division and distribution - of powers deemed essential by the parties to the Compact for the preservation of Liberty, might be wholly subverted. The Executive *235 might be blended with the legislature, and might gain, perhaps, an ascendancy fatal to Liberty ; and in cases of appointment, (if the President did not thus control the Legislature,) they might be made in opposition to his will, two-thirds of both Houses concurring. Const. U. S. art. 1, sec. 7, ch. 2. We return to the enquiry, are the persons designated by the Act, within the contemplation of the 1st and 2d sections, art. 2, Const. U. States ? or, in other words, when the Constitution speaks in that article of officers, according to its true construction, does it embrace persons performing such duties, business, or labour, as Justices are called upon to perform by this Act ? To arrive at the true meaning and construction of this article, it is fair to recur to the period of the adoption of the Constitution to the United States, and enquire what was then intended by an office or officer. Whether, at that time, such duties as are assigned to Justices of the Peace *by this article, were performed, not only in England, (from whence we for the most part borrow our Laws,) but in all the Confederated States, by officers, and by officers alone ? The Common Law of England had been, (but with different modifications,) adopted in all the States, and was then the Law of each State ; and although the nature of our Institutions forbid, in some cases, a resort to the Common Law, as “a safe exposition of American terms,” in this case, there is nothing, which I can perceive in any of our Institutions, which would render the Common Law an unsafe exposition of the terms “office,” or “officer.” An office is said to be that function by which a man hath some employment in the affairs of another. Jac. L. Dic. “Office;” it -implies a duty, and the charge of such duty. Carth. 478. It signifies a place of trust. 5 Mod. 431. There is a difference between an office and employment. 2 Sid. 142. Offices are public or private, and herein it is said, that every man is a public officer who hath any duty concerning the public, and he is not the less a public officer where his authority is confined to narrow limits ; for, it is the duty of the office, and the nature of that duty, which makes him a public officer; not the extent of his authority or the frequency of its exercise. Carth. 474. Some offices are Judicial, some are Ministerial, some relating to the administration of Justice, or to the actual exercise thereof, and must be exercised by persons of fit capacity, and in person and not by deputy. Bac. Abridg. “Office,” a. p. 725. Lord Coke informs us, that Judicial offices cannot be granted to persons inexpert, and in his 9 Rep. 97, and 11 Rep. 4, we find it held, that offices which concern or touch the administration of Justice, cannot be granted for a term of years, or in reversion. All these descriptions apply to Justices of the Peace exercising or discharging the functions or duties required of them by this Act. They have “an employment in the affairs of the United States “a duty is implied, as well as the discharge of that duty.” “ They have duties to perform which (deeply) concern the public,” in a most important respect, “touching or concerning the administration of Justice,” and “they are not the less public officers, if their authority is confined to narrow limits,” to crimes and offences committed against the United States ; for, it is their duty, and the n ature of their duty, and not the extent or frequency of the exercise of authority which makes them officers. “They exercise functions *or duties relating to the administration of Justice, and the actual exercise thereof.” They are authorised not merely to grant a warrant, but to examine into and decide on the probable guilt or innocence of the accused ; they may discharge, bail, or acquit; they may take the recognizances of witnesses, under pain of imprisonment, and are bound to certify their proceedings to the Court having jurisdiction over the crime.
If, then, the Common Law may be relied on as a safe expositor of the terms office and officers, Justices of the Peace are constituted by this Act officers, and they have offices concerning the administration of Justice. In England, such duties as are required of Justices by this Act, have constantly since the Government assumed its present form, been exercised by officers, and officers alone : In every State in the Union, so far as I have been able to obtain information, I think it may be affirmed that the examination, the discharging, bailing, or committing a person accused of crime, has been confided to officers, and to officers only. If, then, the duties, and the nature of the duties to be performed under this Act, by the Justices, makes them officers, according to the principles of the Common Law, and at the adoption of the Constitution of the United States, such duties were in all the States performed by officers alone, and in the understanding of the people of the respective States, could not be properly exercised by any other than officers, is not the conclusion irresistible that the parties to the Eederal Compact intended to comprehend, and did comprehend, under the term officers, in the section under consideration, persons discharging such functions, duties, or labours, as are required of Justices of the Peace, by the aforesaid 33d section of the Judicial Act ? Moreover, one of the greatest defects in the old Articles of Confederation, was, that the powers of the Government could only be carried into effect by the aid of the States. The present Constitution provides for the execution of almost every power granted, without the aid of the States. Now, as the administration of Criminal justice, in many respects, has been confided to the Eed-eral Government, and as these powers cannot be carried into effect without entrusting to a competent number of persons the power of arresting and examining such as are accused of crime, it seems to me that Congress are bound to provide for their ^appointment, and that it would be a subversion of all known principles and practice in the United States, to entrust such important duties to mere agents, persons who are not officers. The 4th Art. Amend. Const. U. S. prohibits the issuing a warrant *236 but on probable cause, supported by oath or affirmation, and the 7th Amendment forbids excessive bail to be taken. Are not these restraints intended to operate on “officers ?” Can they, be considered as addressed to mere individuals, persons negotiating occasional business, forming no part of the Government of the United States, and not even a part of its machinery ? Surely these are restraints on the Government, and are intended to act directly and especially on officers whose duty it shou d be to act in the inceptive stages of Criminal prosecutions; on exactly that description of officers to whom the Act has confided the powers of arrest, examination ■and commitmeht;- "She powers given by. this Act to Justices of the Peace, are too necessary to the safety and well-being of the United States, too strong and tremendous in their application, to be vested in mere nego-ciators or agents, to be exercised or not, at the will of individuals. They are of a character which require that they should be exercised only by officers responsible to the authority from which they derive their power. The Act itself seems to admit that these principles are correct. The Judges of the United States, and Justices of the Peace within the United States, are to exercise these important functions. It seems to- me, that Congress did not intend to describe a class of persons by the description of Justices- of the Peace, but that they intended to designate Judicial officers, who should exercise the powers, and of this I am the better satisfied, when I reflect that they are associated with Judicial officers of the United States, and not with any description of mere individuals, or private persons. Congress passed a Taw, by which they delegated the power of trying persons charged with certain crimes, to the State Courts. They imposed by Law penalties, and authorized their recovery in State Courts. It is manifest they were of opinion, that they could delegate the execution of the Criminal Laws of the United States to the State Courts. Are we then to be surprised at their delegating the execution of the Criminal Laws of the United States, in the inceptive stages of the prosecution, to State officers as officers ? In Feely’s *Case, (a) and in the Case of Jackson v. Rose, (b) this Court denied the right of Congress to delegate the execution of the Laws of the United States to State Courts, and these decisions, according to my understanding, equally forbid the delegation of the execution of the Criminal Laws of the United States, in the inceptive stages of prosecution, to State officers, and that, therefore, such officers cannot act under the grant. The Tribunals or officers of the State, cannot, at the pleasure of Congress, according to the principles of these decisions, be made the instruments of executing the Criminal Laws of the United States. If the powers delegated to Justices are to be exercised, I would ask whether they are to act in the name of the United States, or of the State in which they are Justices ? It seems to me that it has been decided in the Cases referred to, that the Courts cannot act in the name of the United States, and that it follows as a consequence that a Justice of the Peace cannot. And I take it to be clear, that a Justice of the Peace cannot use the name of the Commonwealth for arresting or committing any one who is not an offender against a Law of the State. In what a singular situation would a man in the Commission of the Peace be placed, if he acted under the Act of Congress, and should not be regarded as an officer of the United States ? His functions would certainly be Judicial, and purely so, as far as they consisted of the examination of the accused, and the decision on the question of his probable guilt or innocence; and yet, for mere error in judgment, all bad motive apart, he would be liable to the action Of the accused. Can it be true that these important powers can be confided to unapt and incapable persons, irresponsible to those by whom they are employed, not punishable for corrupt conduct, but liable to the action of the accused, for mere error of judgment ? Could it be expected that the duties assigned by this Act would, under such circumstances, be performed in the manner required by their importance ?
- Arguments against the construction contended for, drawn from inconvenience, seem to me not to be entitled to much consideration ; since they are used in favor of a construction that appears to me, if adopted, would violate great '^principles. Besides, if officers were directly appointed, according to the provisions of the Constitution, for the discharge of the duties assigned to State Justices, it does not appear to me that they need be numerous, or expensive to the United States. The duties are now performed without compensation, and I do not see any reason for supposing that the United States would incur any considerable expense in providing for the discharge of these duties by officers who might be well entrusted with such other Judicial duties as Congress have been disposed to refer to State Magistrates. If their appointment should involve more of expense than is contemplated, still it ought to be encountered for the preservation of great principles, for the security and happiness of the people of the United States. The parties to the Federal Compact, it is supposed, might, by State regulations, obvia.te the occasion for appointing such officers by the Government of the United States ; but if they will not do so, no. alternative is left the Federal Government. That Government, I admit, should avoid all unnecessary expense, and the creation of useless' officers to eat up the substance of the people; but the administration of Justice is of such vital importance to a people, and the expense thereof so trifling, compared with the other expenditures of Government, even in times of peace and quiet, that I should deem the article of expense as matter of but little moment, compared with the good to result. In providing by Law for the prompt, regular and able *237 administration of justice, (when the Laws of meum et tuum have been once fixed,) a Government would deserve more from the people, and contribute more to their prosperity and happiness, than by all other Laws they could enact.' The people of the United States could never complain of expense incurred in producing- such desirable results.
Being therefore of opinion that although Congress can create, they cannot by Law fill an office, but that it must be filled in the mode and manner prescribed by the Constitution : that Congress cannot command or au-thorise Justices of the Peace of a State to use the authority of the United States, or of a state, (without the express authority of the State to do so,) in carrying into effect any penal Law, either in the inceptive or final stages of a prosecution, I am constrained to come to the conclusion that the 33d section of the Judicial Act, so far as it proposes to authorise State officers by general designation, to grant warrants of arrest *against persons accused of crimes or offences against the Laws of the United States, to examine, bail, or commit the accused, compel the attendance of witnesses, recognize them to appear to give evidence under pain of imprisonment, &c. whether these duties be considered as Judicial or as Ministerial, or partaking of both, as not made in pursuance of the Constitution of the United States, and that, therefore, the State officers designated cannot act under that section of the “ Act.” This preliminary enquiry will aid in the farther investigation of the second question, and also of the third question, both of which X proceed to consider together at the same time.
On the 20th July, 1790, Congress passed the Act for the government and regulation of seamen engaged in the merchants’ service ; the seventh section of which is in these words :
“ And be it enacted, That if any seaman or mariner who shall have signed a contract to perform a voyage, shall at any port or place desert, or shall absent himself from such ship or vessel, without leave of the master, or officer commanding in the absence of the master, it shall be lawful for any Justice of the Peace within the United States, (upon the complaint of the master,) to issue his warrant to apprehend such deserter, and bring him before such Justice ; and if it shall then appear by due proof, that he has signed a contract, within the intent and meaning of this Act, and that the voyage agreed for is not finished, altered, or the contract otherwise dissolved, and that such seaman or mariner has deserted the ship or vessel, or absented himself without leave, the said Justice shall commit him to the house of correction, or common jail of the city, town, or place, there to remain until the said ship or vessel shall be ready to proceed on her voyage, or till the master shall require his discharge, and then to be delivered to the said master, he paying all the cost of such commitment, and deducting the same out of the wages due to such seaman or mariner.” 1 vol. L. U. S. p. 141.
Prom whence does Congress derive the power of governing and regulating seamen ? By the 8th sec. of the 1st art. Const. U. S. Congress have power to regulate commerce with foreign nations; and among the-several States, and with the Indian tribes. This Act is not, however, a regulation of commerce ; it is a regulation of seamen. The power of governing and regulating seamen in the merchants’ *service, carrying on foreign commerce, or commerce among the States, is an incident to the power granted as aforesaid, to regulate foreign commerce, and among the several States. This incidental power is one without which the principal power to which it is incident, could not be carried into effect. And Congress, by the last clause of the same 8th section of the 1st article, have power to pass all Laws necessary and proper to carry into effect all the powers granted by the Constitution ; and the incidental powers are as much granted by the Constitution, as the express powers. The incident passes by the grant, as well as the principal. Is the said 7th section of the above recited Act, so far as it authorises any Justice of the Peace within the United States to issue his warrant to apprehend a deserter, and commit him until the ship or vessel shall be ready to proceed on her voyage, or the master shall require his discharge, and then-to be-delivered.to the master, necessary and proper for carrying into effect the power of governing and regulating seamen engaged in the merchants’ service ? I readily admit that Congress, in the regulation of seamen, might well declare how contracts should be entered into by seamen, and how they should be performed ; that they might require and enforce the specific execution of the contract on the part of the seaman. In enforcing, however, these contracts specifically, (when legal proceedings are resorted to,) Congress can only authoritatively use, or command the tribunals or officers of the U. States. If tribunals or officers of another sovereignty be resorted to, on principles of comity, to enforce the contract specifically, they could only act in the manner and by the course of proceeding sanctioned by the sovereignty to which they belonged. If, then, a State officer be resorted to, he could only act according to the rules prescribed by the State Government, and in obedience to the Law of the State. To grant that Congress can command the Judicial tribunals of the States, or the Judicial officers of the States, in the execution of the Laws of the United States, according to the mode prescribed by Congress, would be to surrender up the Sovereignty of the States. This never could be yielded by a Sovereign State. That Congress should exercise sucha power, • cannot be necessary or proper in carrying into effect the power of regulating seamen ; nor can it be consistent with the distribution of powers among the respective governments of our complicated system. If the Justices, *in the execution of this act, are to be considered as mere individuals, and not as officers, then the enquiry occurs, is it proper to entrust Judicial powers, or quasi Judicial *238 powers of so high a character, to mere individuals ? Is it necessary or proper to delegate such powers to any others than officers responsible for their conduct ? A captain, or master of a ship or vessel, alleges that a seaman has entered into a contract according to the forms prescribed by the Act of Congress, that he has deserted, that the voyage has not been finished -or altered, and that the contract has not been altered or otherwise dissolved; and he requires of a Justice of the Peace a warrant to apprehend the seaman. When the seaman is apprehended and brought before the Justice, he sets in judgment and decides all the questions arising in the case. Has the seaman signed such a contract as is contemplated by the Act of Congress ? Has the voyage been finished ? Has it been altered ? Or has the contract been in any way dissolved ? These several points, involving both Haw and fact, are to be decided by the Justice. He has not even the aid of a jury to determine the facts. These duties are purely Judicial. Here we have alis pendens before a Judge. We have actor, reus, et Judex. We have a cause depending which deeply involves the liberty of the citizen. Every one will at once perceive that the investigation may produce questions of the greatest nicety and difficulty, -both in point of Haw and fact. I cannot persuade myself, that all this can be either necessary or proper for the government or regulation of seamen. It seems to me to break down great principles, and to prostrate every thing like propriety, to commit to irresponsible agents such a trust. That the master may be authorised to pursue and apprehend his deserted seaman, I do not at all question. That he might be aided or ássisted by those he might employ, I would readly admit; but it seems to me that it is not competent for Congress to establish by Haw a Tribunal, put into office State officers, and direct the inode of proceeding by the Tribunal so established, or to delegate these high Judicial powers to individuals, to be exercised when a master shall institute a suit or ask a warrant against a seaman, to enforce by Haw the specific execution of his contract. This may not be done not only for the reasons aforesaid, but because Congress cannot by Haw appoint to office ; and all the objections before stated against the appointment of Justices of the Peace for the discharge *of Judicial functions under the Judicial Act, apply to the appointment of Justices to the discharge of the Judicial duties assigned to them by the Act now under consideration. By the 33d section of the Judicial Act, important Judicial duties in the administration of Criminal justice, are delegated to Justices of the Peace. By this Act, important Judicial duties in the administration of Civil justice, (the execution of contracts,) are attempted to be delegated to the same State officers. In both instances, many of the duties are purely Judicial, of a very high character, and equally involve the rights and personal liberty of the citizen. These duties, in neither case, in my judgment, according to the theory and principles of our Governments, or'according to the provisions of our fundamental Haws, can be exercised other than by responsible officers, who are to act by virtue of powers granted them by the Sovereignty to which they owe their existence. In both instances Congress have evinced the same conviction of the necessity of confiding these powers to officers. They seem to me to have erred in supposing that they could command the State Judicial officers; that they could authoritatively substitute State officers for Federal officers. Congress may have intended, by calling in a Justice of the Peace, to restrict in some sort the powers of the master over his seaman, and at the same time to secure the performance of the voyage. But the method adopted seems to be neither necessary nor proper. I do not regard the Act as penal, or the confinement as a punishment. I regard the confinement as the means adopted for securing the specific execution of the contract; and if Congress had assigned the duties to responsible officers, constitutionally appointed, there- could have been no objection, as far as I can perceive, to the manner of enforcing the contract. It is extremely probable that Congress intended to protect the Jailor to whose custody a seaman might be committed, against the action of the seaman, if, indeed, he did not come within the purview of the Statute ; and it is equally probable that Congress likewise intended or expected that the Justice of the Peace would be also protected against the action of the seaman, if he decided the case erroneously, but not corruptly. Yet, if the Justice of the Peace be not a Judge, if he be not an officer clothed with Judicial authority, exercising Judicial functions and responsible to Government, it cannot, I presume, be going too far to say, that neither the Justice nor the Jailor *would be protected against the action of the seaman, if his case did not, in truth, come within the Act of Congress. There seems to me to exist a very slight analogy, if any, between the cases under consideration and the cases of the Commissioners acting or deciding on the Houisiana or the Florida fund. These Commissioners were arbitrators, chosen according to the agreement of the concerned. Not so are the Justices in either of the cases under consideration. In these the Government exerts itself directly and forcibly on the citizen by officers of another Sovereignty, over whom it undertakes to act authoritatively in cases involving the dearest rights and liberties of the citizen, and against his will. As to cases in which officers of one Sovereignty perform occasional matters of business for another Sovereignty, they act on principles of comity, no superiority being assumed by the latter over the former, no command being directed to them, and therefore distinguishable (if for no other reason) from the cases under consideration ; and it might perhaps be said, that no instance could be given of similar powers being exercised on principles of comity, by One nation for another. Hence, I am compelled to come to the conclusion, *239 that the said 7th section of the Act of Congress, passed on the 20th June, 1790, entitled, “An Act for the government and regulation of Seamen,” so far as it authorizes any Justice of the Peace within the United States to issue his warrant to apprehend a deserter and commit him, until the ship or vessel shall be ready to proceed on her voyage, or the master shall require his discharge, and then to be delivered to the master, is not made in pursuance of the Constitution of the United States. As, then, the duties which have been performed in this case, could not constitutionally have been directed to be performed by individuals appointed by haw, or by persons designated by general description for that purpose, as Justices of the Peace, the acts of Joseph H. Mayo, a Justice of the Peace, one of the officers designated by general description for that purpose, were without legal authority, and not effectual for any legal purpose. But, as by the petition and “return,” and the facts conceded by Counsel, the prisoners appear to me to be under leg'al obligations to perform the voyage agreeably to their contract, and by the Act of Congress may be constrained to do so by the master; and as they are only held in restraint by the Jailor, (who may be well regarded as the servant or agent of the master,) *till the vessel to which they belong, named in the proceedings, shall be ready to proceed on her voyage, or the master shall require their discharge, there does not appear to me to be any reason for discharging them. The most that could be done would be to turn them over into the immediate custody of the master or captain, who might confine them wheresoever he might think fit, without, however, practis-ing any unnecessary severity or force, till the vessel proceeded on her voyage, or the voyage should be changed or altered. It would be time enough to interfere, when they complained of any unnecessary restraint pr force; but as at present no such complaint is made, I am of opinion, that they are not entitled to their discharge.

 1 Virginia Cases, 321.

 Ante 34.